# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| GARY MONTGOMERY,    )<br>    Plaintiff,    )<br>    )<br>v.    )<br>    )<br>BETH GENTRY, et al.,    )<br>    Defendants.    ) | Civil Action No. 3:20-cv-00406<br>Judge Trauger / Frensley |

## REPORT AND RECOMMENDATION

### Introduction, Background, and Allegations of Plaintiff's Complaint

Pending before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro Government"). Docket No. 11.[1] Defendant has contemporaneously filed a supporting Memorandum of Law. Docket No. 12. As grounds for its Motion, Defendant argues that Plaintiff has failed to plead facts that could support an inference of a municipal policy or custom for either of his claims against the Metropolitan Government because he has not plead facts sufficient to establish deliberate indifference to his constitutional rights. *Id.*

Plaintiff, a pro se pre-trial detainee, filed his Complaint in this action arguing that Defendants Metro Government, Eichstaedt, and Gentry kept him in administrative segregation for 224 days without due process and denied him access to religious materials and services in violation of his First, Fourth, Sixth, Eighth, and Fourteenth Amendment[2] rights pursuant to 42 U. S. C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U. S. C. §

---

[1] The instant Motion is filed by Defendant Metro Government solely on its behalf. Docket No. 11. While the undersigned will recount Plaintiff's allegations against Defendants Eichstaedt and Gentry, they are not parties to the instant Motion.

[2] Although Plaintiff on page 3 of his Complaint explicitly alleges violations of his rights under the Fourth, Eighth, and Fourteenth Amendments, on page 14 of his Complaint, Plaintiff alleges violations of his First, Fourth, Sixth, Eighth, and Fourteenth Amendment rights. *See* Docket No. 1. The undersigned will, therefore, construe Plaintiff's Complaint as alleging violations of his First, Fourth, Sixth, Eighth, and Fourteenth Amendment rights.

2000cc-1. Docket No. 1. Plaintiff additionally alleges retaliation, intentional infliction of emotional distress, and conspiracy. *Id.* Specifically, Plaintiff argues that he was kept in administrative segregation for several months without due process, as the "discipline hearing is a simple rubber stamp process." *Id.*, p. 16. Plaintiff also argues that his placement in a "maximum correctional center" is based upon "points" accrued due to "bogus write ups," and Plaintiff contends, "Some write ups were double jeopardy type redo's to get the desired effect, lacking due process." *Id*.

Plaintiff argues that the restrictions imposed upon inmates in administrative segregation violate his constitutional rights because they are disparate to those imposed on inmates in general population. *Id.* In particular, Plaintiff takes issue with the restriction on privileges including limited phone use, no visitors, inability to go to religious activities, inability to attend programs or go to the law library, restricted movement and wearing of leg irons and handcuffs that are attached to belly chains, limited time outside the cell (one hour per day), limited outdoor time (one hour per day, weather permitting), inability to have "any meaningful physical exercise," and the fact that showers must occur during recreational time. *Id.* Plaintiff notes that general population inmates do "not have any of the restrictions mentioned [ ] above. They can come and go to their bunk as needed from 8 am to 10 pm using the phone at will and capable of non-stop exercise." *Id.*, p.17. Plaintiff argues, therefore, that he has a liberty interest in being housed in general population. *Id.*

Plaintiff argues when he was given a "review," he was brought before "a group of people and not allowed to ask any questions." *Id.*, p.18. Plaintiff argues that he was kept in administrative segregation based upon lies spread by another inmate such that he "was treated as guilty without recourse." *Id.* Plaintiff notes that he continued to file grievances weekly regarding the lack of due process and the continuation of punishment. *Id.*, p. 17.

2

Case 3:20-cv-00406    Document 18    Filed 08/17/21    Page 2 of 15 PageID #: 150

As to Defendant Gentry, Plaintiff argues that she, and the case management staff, conspired to violate his rights by pre-planning to send Plaintiff to disciplinary hold and keep him there without notice or hearing. *Id.*, p. 23. Plaintiff argues that Defendant Gentry further violated his rights by "leaving [him] in a punitive state for 224 consecutive days." *Id.*

With regard to Defendant Eichstaedt, Plaintiff argues that he "wrote up" and "reported" Defendant Eichstaedt for "various abuses," including "stealing other inmates' commissary and eating it," and that "ever since that time Officer Eichstaedt targeted Plaintiff for harassment and abuse." *Id.*, p. 19. Specifically, Plaintiff avers that Defendant Eichstaedt "arbitrarily" denied him recreational time and confiscated non-contraband items "out of spite." *Id*.

As to Defendant Metro Government, Plaintiff argues, "It is the custom and practice of offices of Metropolitan Government of Nashville and Davidson County to take away the privileges of inmates on an allegation of rules violations and providing no due process right to appeal or fight the allegations." *Id.*

Regarding his religious claims, Plaintiff argues that he requested Jewish reading materials but was never provided with any, even after providing the address and phone number of an organization that was able to provide the items for free. *Id.*, p. 20. Plaintiff additionally avers that he requested access to a Rabbi but that no Rabbi came. *Id.* Plaintiff further maintains that he was not permitted to attend religious services "while on maximum, on discipline, or when on non-disciplinary admin seg." *Id.* Plaintiff also avers that "at some point while on maximum Plaintiff's Jewish religious kosher meal was stopped and then denied without allowing consultation with Rabbi." *Id.*

Plaintiff additionally avers that, "at some point" his attorney attempted to visit him but was turned away because "they could not find" Plaintiff. *Id.* Plaintiff also takes issue with the fact that

3

he repeatedly requested a tablet communication device but was denied because the Jail was planning a move in October 2019 to a new facility but that move had not occurred as of the filing of Plaintiff's Complaint. *Id.*, p. 20-21.

Plaintiff sues Defendants Eichstaedt and Gentry solely in an individual capacity, but Plaintiff attempts to sue Defendant Metro Government in both an individual and official capacity. *Id.*, p. 2-3.[3] Plaintiff argues that, as a result of Defendants actions, he began to develop "excruciating stomach and back pain" and "eventually end[ed] up with a 3-week hospital stay and also enduring multiple surgical procedures for a bleeding ulcer." *Id.*, p. 20. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief, costs, fees, and any other relief the Court deems just. *Id.*, p. 24-25.

Defendant Metro Government argues that Plaintiff's two surviving claims against it should be dismissed because Plaintiff has failed to allege facts that could support his claims. Docket No. 12.[4] Specifically, Defendant argues that Plaintiff's arguments towards it are conclusory and unsupported, such that, even construing Plaintiff's arguments as true, he failed to allege facts that could support an inference that any policy or custom of Metro Government was a moving force behind any alleged violation of his constitutional rights, or that Metro Government acted with deliberate indifference towards those rights. *Id.*

With regard to Plaintiff's RLUIPA Religious Practice claim, Defendant argues that Plaintiff's allegations are "either highly generalized or aimed at Defendant Corporal Eichstaedt."

---

[3] As a governmental entity, Defendant Metro Government cannot be sued in an individual capacity; accordingly, Plaintiff is deemed to sue Defendant Metro Government solely in an official capacity.

[4] After completion of its frivolity review, the Court found that Plaintiff's claims that he was denied procedural due process under the Fourteenth Amendment when he was kept in administrative segregation for 224 days based on an alleged Davidson County Sheriff's Office policy or custom of withholding privileges without a chance to be heard, and that he did not receive Kosher meals or a meeting with a Rabbi as permitted under his First Amendment right to exercise his religious beliefs, could proceed against Defendant Metro Government. Docket No. 5. Accordingly, only those two claims are presently before the Court.

*Id.* Defendant notes that *respondeat superior* is not a basis for the imposition of liability under §1983. *Monell v. Dep't of Soc. Servs.*, 436 U. S. 658, 690-91 (1978). Defendant further notes that none of the grievances Plaintiff attached to his Complaint mention any burden on his religious beliefs or practices. *Id.* Defendant argues that Plaintiff has failed to articulate any facts to suggest that Metro Government has any policy or custom interfering with his religious practices, much less how any such policy or custom has been applied to him. *Id.* Defendant argues that conclusory allegations, unsupported by facts showing a clear and persistent pattern of constitutional violations, cannot establish a municipal liability claim, such that Plaintiff has fallen short of his burden to plead deliberate indifference. *Id., citing D'Ambrosio v. Marino*, 747 F. 3d 378, 387-88 (6th Cir. 2014).

Addressing Plaintiff's procedural Due Process claim, Defendant argues that Plaintiff's allegations are vague and conclusory, specifically noting that Plaintiff fails to identify what rule violations trigger the alleged deprivation or which privileges, fails to specify how some inmates accessing tablets while others do not rises to the level of a constitutional violation, and fails to allege facts to support these alleged policies or customs. *Id.* Defendant maintains that simply recounting several instances where Plaintiff avers denial of recreation time or other privileges fails to establish either that a constitutionally violative policy or custom existed or that it was the moving force behind any constitutional violation because Plaintiff has failed to allege facts to show that either the Davidson County Sheriff's Office or Metro Government knew about or ignored a clear pattern of similar constitutional violations. *Id., citing Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.,* 455 F. 3d 690, 701 (6th Cir. 2006). Defendant argues that, absent such, Plaintiff's claim should be dismissed. *Id.*

Defendant also contends that Plaintiff has likewise failed to connect any alleged policy or

custom with his alleged mistreatment by Defendants Eichstaedt and Gentry, but that even if Plaintiff had, neither Defendant Eichstaedt nor Defendant Gentry are policymakers, and their actions cannot impart municipal liability. *Id., citing Pembaur v. City of Cincinnati*, 475 U. S. 469, 481 (1986). Defendant further observes that, for purposes of §1983, policymakers are determined by state law. *Id., citing Miller v. Calhoun County*, 408 F. 3d 803, 813 (6th Cir. 2005). Defendant notes that under the Metropolitan Government's Charter and Code of Ordinances, the sheriff is the designated policymaker for the Davidson County Sheriff's Office. *Id., citing* Metropolitan Charter §16.05; Metropolitan Code of Ordinances §1.16.020(A). Defendant argues that because neither Defendant Eichstaedt nor Defendant Gentry are the sheriff and Plaintiff has failed to allege facts suggesting that policymaking authority had been delegated to them by the sheriff, the individual Defendants are not policymakers who could establish municipal liability. *Id.* Accordingly, Defendant Metro Government maintains that Plaintiff's claims against it should be dismissed. *Id.*

Plaintiff has filed a Response, arguing that, as Metro Government employees, the individual Defendants are subject to Metro Government's training standards, policies, and customs. Docket No. 15, p. 1.[5] Plaintiff further argues that he is not a trained attorney and he "tends to think, speak and write colloquially forgetting that inferences made that normal people would understand sometimes should be spelled out in legal papers." *Id.* He continues, "Plaintiff believes that the Court understood those inferences relating to Metro's training, standards, policies and customs of it's employees as it relates to his claims." *Id.*, p. 2.

Plaintiff acknowledges that the Sheriff is a policymaker of Metro Government, and he contends, "Per policy, any time an inmate gets a disciplinary 'write-up' they are entitled to a due process hearing. The officers of DCSO are permitted and taught in their training to skirt this

---

[5] As noted, the individual Defendants are not parties to the instant Motion to Dismiss.

constitutional protection by not issuing a 'write-up', but still taking away privileges as punishment through 'rules violations.' No disciplinary report is initiated and therefore no disciplinary hearing is scheduled even though the punishment was meted out." *Id.* Plaintiff argues that "such training and policies or customs of practices do indicate the deliberate indifference to the constitutional rights of all inmates." *Id.*

Plaintiff clarifies that he believes the individual Defendants were under Metro Government's direction "in as much as they were or were attempting to comport to Metro's training, standards, policies or customs of doing business." *Id.* Plaintiff further clarifies that his "complaint regarding religious meals is not that he was denied Kosher meals initially, but that per policy, training or custom the meals were halted and denied going forward without notice, warning or hearing." *Id.* He adds that, although he requested the presence of a Rabbi so he could "comply with certain rites, rituals or fast observances" that so required, and provided a name, address, and phone number of an organization capable of providing free written materials, "doing absolutely nothing to assist Plaintiff with his religious needs is deliberate indifference to those needs." *Id.*, p. 2-3. Plaintiff asserts that no corrective actions were taken despite his filing grievances, which amounts to a "continuation of deliberate indifference." *Id.*, p. 3.

Defendant has filed a Reply, arguing that Plaintiff's allegations fail to show deliberate indifference to his rights and are insufficient because they fail to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." Docket No. 17, *quoting Garner v. Memphis Police Dep't*, 8 F. 3d 358, 364 (6th Cir. 1993). With regard to Plaintiff's religious practice claim, Defendant argues that in order for Plaintiff to prevail on said claim, Plaintiff would need to show that the Metro Government had an unconstitutional policy; that the unconstitutional policy was applied to Plaintiff; and that the

7

unconstitutional policy was a moving force behind the denial of Plaintiff's religious rights, but that Plaintiff has failed to do so because his allegations are conclusory. *Id.* Specifically, Defendant contends that Plaintiff does not explain why prison officials' alleged denial of Kosher meals and access to a Rabbi rises to the level of a policy or custom, much less that such policy or custom was the "moving force" behind the injuries Plaintiff alleges. *Id.* Defendant argues that Plaintiff's failure to allege facts showing a clear and persistent pattern of constitutional violations cannot establish a municipal liability claim. *Id.*

With regard to access to Kosher meals, Defendant maintains that Plaintiff has not alleged that his diet was insufficient to sustain him in good health or that he was not able to avoid eating non-Kosher foods, such that he has failed to state a religious practice claim on this ground. *Id.*, p. 3, *citing Colvin v. Caruso,* 605 F. 3d 282, 290 (6th Cir. 2010). As for access to a Rabbi or religious materials, Defendant argues that Plaintiff has not alleged that Metro Government has a policy or custom of denying access to religious leaders, and that absent such, his claim that "doing absolutely nothing to assist plaintiff with his religious needs is deliberate indifference to those needs" is conclusory and insufficient to impose municipal liability. *Id.*

Turning to Plaintiff's procedural due process claim, Defendant argues that Plaintiff's allegations are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that do not show more than purported "isolated mistreatment, even if it lasted for months." *Id.*, *citing Ashcroft v. Iqbal,* 556 U. S. 662, 684 (2009); *Johnson v. Hardin Cty., Ky.,* 908 F. 2d 1280, 1287 (6th Cir. 1990). Defendant argues that although Plaintiff, in his Response, alleges that DCSO officers are trained to take away privileges on the basis of "rules violations" in lieu of disciplinary due process hearings, Plaintiff does not allege facts to meet his burden to show a widespread and settled custom of denying inmates "privileges" without due

8

Case 3:20-cv-00406   Document 18   Filed 08/17/21   Page 8 of 15 PageID #: 156

process. *Id.*, *citing Jones v. Muskegon Cty.,* 625 F. 3d 935, 946 (6th Cir. 2010).

Finally, Defendant argues that because Plaintiff concedes that the Sheriff of Davidson County is the policymaker for DSCO (and not the individual Defendants), Plaintiff's municipal liability claims should be dismissed. *Id.*, p. 4.

For the reasons set forth below, the undersigned recommends that Defendant's Motion to Dismiss (Docket No. 11) be **GRANTED**, and that Plaintiff's claims against Defendant Metro Government be **DISMISSED**.

## LAW AND ANALYSIS

**Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F. 3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. at 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F. 3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U. S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is

9

Case 3:20-cv-00406   Document 18   Filed 08/17/21   Page 9 of 15 PageID #: 157

> inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U. S. at 678-79 (citations omitted).

**42 U. S. C. § 1983**

**Generally**

Plaintiff alleges violations of his First, Fourth, Sixth, Eighth, and Fourteenth Amendment rights pursuant to 42 U. S. C. § 1983. Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U. S. 42, 48 (1988)*, citing Parratt v. Taylor,* 451 U. S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U. S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U. S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U. S. 299, 326 (1941).

**Individual Capacity Claims**

42 U. S. C. § 1983 does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U. S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U. S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F. 3d 810, 818 (6th Cir. 1996).

In order for a defendant to be held liable in their individual capacity, Plaintiff must demonstrate that the defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell v. Brown*, 867 F. 2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F. 2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F. 2d at 1479. *See also, Anderson,* 477 U. S. at 257; *Nix v. O'Malley,* 160 F. 3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U. S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F. 2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F. 2d 121, 128 (6th Cir. 1982).

**Official Capacity Claims**

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F. 3d 350, 355 n. 4 (6th Cir. 2000), *citing Kentucky v. Graham*, 473 U. S. 159, 165 (1985). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F. 2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*. Additionally, where

an entity is named as a defendant, an official capacity claim against its individual employees is redundant, and those claims should be dismissed. *Foster v. Michigan*, 573 Fed. Appx. 377, 390 (6th Cir. 2014); *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013).

As discussed above, the law is well-settled that respondeat superior does not provide a basis for liability under § 1983. *See Bd. Of County Comm'rs v. Brown*, 520 U. S. 397, 403 (1997); *Monell v. Dept. of Soc. Serv.*, 436 U. S. 658, 690-91 (1978); *Miller v. Calhoun County*, 408 F. 3d 803, 813 (6th Cir. 2005). In order for a public entity to be held liable, therefore, a plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U. S. 378, 387-88 (1989). *See also, Monell*, 436 U. S. at 690-91 (In order to find a governmental entity liable, Plaintiff must establish that (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.). In other words, a plaintiff must show that some official policy, practice, or custom was the moving force behind the alleged constitutional deprivation. *See Monell*, 436 U. S. at 691; *Miller*, 408 F. 3d at 813.

Additionally, the public entity cannot be held liable for the actions or inactions of its supervisory officials simply as their employer unless a plaintiff can show that the supervisor either encouraged the specific incident of misconduct or had some direct, personal involvement in the alleged constitutional deprivation. *See, e.g., Knott*, 481 F. 3d at 574; *Poe v. Haydon*, 853 F. 2d 418, 429 (6th Cir. 1988). At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *Shehee v. Luttrell*, 199 F. 3d 295, 300 (6th Cir. 1999).

**42 U. S. C. 2000cc-1**

Both the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Eleventh Amendment bar Plaintiff from recovering monetary damages from a state or its employees in their official capacity. *See, e.g., Evans v. Vinson*, 427 F. App'x 437, 441-42 (6th Cir. 2011); *Thiokol Corp. v. Dep't of Treas.*, 987 F. 2d 376, 381 (6th Cir. 1993). RLUIPA further prevents the recovery of monetary damages against state/government officials in their individual capacity. *See, e.g., Sossamon v. Texas*, 563 U. S. 277, 280 (2011); *Haight v. Thompson*, 763 F. 3d 554, 570 (6th Cir. 2014).

**The Case at Bar**

As discussed above, Plaintiff's surviving claims against Defendant Metro Government are a RLUIPA religious practice claim and a procedural Due Process claim.

As an initial matter, none of the grievances Plaintiff attached to his Complaint grieve a burden on his religious beliefs or practices. *See* Docket No. 1-1 at 3-30. Additionally, although Plaintiff argues generally that his Kosher meals were stopped and that he did not receive requested religious materials or a visit from the Rabbi, Plaintiff does not articulate any facts averring that this was due to an official Metro Government policy or custom, nor does he allege facts that any such policy or custom was the "moving force" behind his alleged constitutional injury. Plaintiff's allegations are general, conclusory, not attributed directly to Defendant Metro Government, and unsupported by facts showing a clear and persistent pattern of constitutional violations. Accordingly, Plaintiff cannot prevail on this claim.

Moreover, in order to prevail on his municipal liability claim under §1983, Plaintiff must specifically identify the municipality's allegedly unconstitutional policy, connect the policy to the municipality itself, and show that his particular injury was incurred because of the execution of that policy. *Garner v. Memphis Police* Dep't, 8 F. 3d 358, 364 (6th Cir. 1993). Plaintiff has simply

failed to do so, and Plaintiff's §1983 municipal liability claim against Defendant Metro Government should be dismissed.

With regard to his procedural Due Process claim against Defendant Metro Government specifically, Plaintiff argues that Metro Government has a custom and practice of taking away the privileges of inmates on an allegation of rules violations and providing no due process right to appeal or fight the allegations, and also that Metro Government discriminated with their policy to allow some inmates to have tablets while others could not. These allegations are conclusory; Plaintiff does not identify what privileges are taken away from inmates or what rule violations trigger the alleged deprivation, nor does Plaintiff specify what constitutional violation occurs when some inmates are allowed access to tablets while others are not. Although Plaintiff states that he was, on several instances, denied recreation time or other privileges, such recitation is insufficient to establish the existence of a custom or policy, and Plaintiff has not alleged facts to show that Metro Government knew about and ignored a clear pattern of similar constitutional violations, such that he cannot sustain this claim.

## CONCLUSION

For the reasons discussed above, the undersigned recommends that Defendant's Motion to Dismiss (Docket No. 11) be **GRANTED**, and that Plaintiff's claims against Defendant Metro Government be **DISMISSED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report

and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U. S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U. S. 1111 (1986); 28 U. S. C. § 636(b)(1); Fed. R. Civ. P. 72.

                                           **JEFFERY S. FRENSLEY**
                                           United States Magistrate Judge