# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

GARY MONTGOMERY,         )
      Plaintiff,         )
                  )
v.                   )       **Civil Action No. 3:20-cv-00406**
                  )       **Judge Trauger/Frensley**
BETH GENTRY, et al.,      )       **Jury Demand**
      Defendants.      )

## REPORT AND RECOMMENDATION

### I.      INTRODUCTION

This matter is before the court upon Defendants' Motion for Summary Judgment. Docket No. 28. Along with their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law, a Statement of Undisputed Material Facts, and the Declarations with Exhibits of Beth Gentry, Brian Eichstaedt, and Keli Oliver. Docket Nos. 28-1–17, 29, 30. Plaintiff has filed Responses to Defendants' Motion and Statement of Undisputed Material Facts.[1] Docket Nos. 37, 38. Defendants have filed a reply. Docket No. 39.

For the reasons discussed below, the undersigned finds that there are no genuine issues of material fact, and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 28) be **GRANTED**, and that this action be **DISMISSED WITH PREJUDICE**.

### II.      BACKGROUND

On April 15, 2020, Plaintiff, a pre-trial detainee in the custody of the Davidson County Sheriff's Office ("DCSO") filed this pro se action pursuant to 42 U.S.C. §1983, arguing that

---

[1] Plaintiff's Response to Defendants' Statement of Undisputed Material Facts does not contain the requisite citations to the record and is not compliant with either the Local or Federal Rules.

Defendants violated his substantive and due process rights under the "Fourth, Eight[h], and Fourteenth Amendments," and further violated his First Amendment rights. Docket No. 1. Specifically, Plaintiff avers that, in an effort to punish him, Defendant Gentry changed his housing classification to administrative segregation without notice or a hearing and without a legitimate basis. *Id.* Plaintiff further avers that, in administrative segregation, his telephone access is limited to once every 30 days; he is not allowed visitations; he is not provided religious activities; he does not have access to the law library; he has limited time out of his cell; and his being required to remain in restrains when outside his cell deprives him of meaningful exercise. *Id.* Plaintiff additionally avers that his approximately seven-month placement was reviewed on only one occasion, during which he was not permitted to ask any questions. *Id.* With regard to Defendant Eichstaedt, Plaintiff avers that after he filed grievances regarding his conduct, Defendant Eichstaedt retaliated against him by arbitrarily denying him time out of his cell and confiscating non-contraband items, including religious reading materials. *Id.*

Plaintiff sues Defendants in their individual capacity, seeking declaratory and injunctive relief, as well as compensatory and punitive damages, costs, fees, and any other relief the court deems reasonable. *Id.*

As grounds for their Motion, Defendants argue that they are entitled to a judgment as a matter of law on Plaintiff's claims against them because: (1) Plaintiff's substantive due process claim is time-barred; (2) Plaintiff's substantive due process claim also fails because his placement in administrative segregation was reasonably related to a legitimate governmental objective; (3) Plaintiff's procedural due process claim fails because he was afforded any process he was due and because he was not deprived of a protected liberty interest; (4) Defendant Eichstaedt's conduct did not place a "substantial burden" on Plaintiff's religious practice to support a free exercise claim;

and (5) there is no causal connection between Plaintiff's protected speech and Defendant Eichstaedt's conduct as required to support a First Amendment claim. Docket No. 28. Defendants further argue that the are entitled to qualified immunity. *Id.*

In his Response to the instant Motion, Plaintiff argues that his Complaint is timely because he filed within one year of his "unconstitutional solitary confinement punishment from February 7, 2019 through September 4, 2019." Docket No. 38. Plaintiff further argues that he displayed no conduct that posed a "serious threat to life, property, or the security and/or orderly operation of the correctional facility" such that he was improperly housed in RHU. *Id.* Plaintiff also argues that the conditions of confinement in the RHU "do not approximate those in general population," but rather, are the same conditions of confinement as "the hole," where inmates go to be punished. *Id.; see also* Docket No. 37. Plaintiff also maintains that his placement in "two-man cells" in no way limited his access to "dozens" of inmates. *Id.* Plaintiff additionally denies refusing indoor or outdoor recreation and notes that if he did not take it, it was either not offered or arbitrarily cancelled. *Id.; see also* Docket No. 37.

In his Response to Defendants' Statement of Undisputed Facts, Plaintiff, without the requisite citations to the record, argues that the Exhibits submitted with Defendants' Declarations are either "false reports" or demonstrate "a false recollection or compilation of fiction." Docket No. 37. Plaintiff takes issue with his being housed in the RHU without a hearing, and Plaintiff argues that Defendant Gentry's decision was based on "erroneous" and "manufactured 'write-ups' to create the condition to get Plaintiff to 'the hole' in the first place." *Id.* Plaintiff additionally argues that he did not see the Review Board until April, when he was told he could not ask questions or object to his housing. *Id.* Plaintiff further argues that in-person visits are not permitted in the RHU; that recreation requires him to be handcuffed, shackled, and belly-chained; that he

was specifically targeted for searches; and that Defendants' records are falsified. *Id.*

Defendants have filed a Reply to Plaintiff's Response, arguing that Plaintiff's Responses to their Motion and Statement of Undisputed Material Facts fail to cite to any materials in the record or otherwise that show that the materials cited by Defendants do not establish the absence of a genuine dispute, nor does Plaintiff substantively address any of Defendants' arguments. Docket No. 39. Defendants note that Plaintiff's objections to Defendants' Statement of Undisputed Material Facts does not contain evidence in a form required by the Federal or Local Rules. *Id.* Defendants argue that although Plaintiff "disputes" 16 of Defendants' 19 facts, in none of Plaintiff's responses to these facts does he provide any citations to the record to support his assertions, nor does he show that the evidence used by Defendants to support their facts does not establish the absence of a genuine dispute or that any of Defendants' evidence is inadmissible. *Id.*

Defendants further note that this court has warned Plaintiff that he "must show there is a material dispute of fact *with citations to the record, affidavits or other matter of evidence*" and that a failure to respond to the statement of facts in the manner outlined by the court "may result in the court taking the facts alleged in the matter as true and granting the relief requested." *Id., quoting* Docket No.20 at 2-3, emphasis original. Defendants argue, therefore, that the court should deem Defendants' facts undisputed for purposes of summary judgment. *Id.*

Defendants reiterate their contention that Plaintiff's substantive due process claim is time-barred because Plaintiff admits that he signed his Complaint on April 15, 2020, which is more than one year after his placement in administrative segregation. *Id.*, n. 1. Defendants further contend that Plaintiff's admission that Defendant Eichstaedt left two bibles in his cell following a cell search supports the conclusion that Defendant Eichstaedt did not place a substantial burden on Plaintiff's religious practice or beliefs. *Id.* With regard to Plaintiff's new allegation that Defendant

Eichstaedt "threw away" his religious magazines, Defendants argue that this new allegation should be disregarded by the court because Plaintiff cannot raise new allegations in response to a motion for summary judgment and because Plaintiff fails to cite to record evidence to support this allegation. *Id.*

Defendants argue that because Plaintiff did not properly respond to their Statement of Undisputed Material Facts, the court should deem their facts undisputed for purposes of summary judgment. *Id.* Defendants further argue that by failing to address the arguments in their Motion for Summary Judgment, Plaintiff has abandoned his claims, such that they should be dismissed. Finally, Defendants argue that because they did not violate any of Plaintiff's constitutional rights, they are entitled to qualified immunity. *Id.*

## II. UNDISPUTED FACTS[2]

### A. Declaration of Beth Gentry

Defendant Beth Gentry is employed as the Classification Director with the Davidson County Sheriff's Office ("DCSO") and has been employed in this role for approximately 26 years. Docket No. 28-1, Declaration of Beth Gentry ("Gentry Dec."), ¶ 2. In her capacity as Classification Director, Defendant Gentry is familiar with the classification system utilized by the DCSO to classify inmates for housing purposes during their incarceration. *Id.*, ¶ 3.

Per DCSO Policy #1-3.400, Restrictive Housing, inmates whose presence in the general jail population poses a serious threat to life, property, or the security and/or orderly operation of the correctional facility are separated from the general population and placed in a Restrictive Housing Unit ("RHU") under administrative Status. *Id.*, ¶ 4; Ex. A. Also per DCSO Policy #1-

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

5

3.400, the conditions of confinement in a RHU approximate those in the general population to the extent practical in light of the need to maintain a safe and secure environment, and services and programs available to inmates in RHU are equivalent to those available to general population inmates where possible. *Id.*, ¶ 5. Administrative Status inmates are provided access to recreational reading materials, legal research materials, the law library, the telephone, social services, case management services, religious guidance, recreational programs, educational programs, and visitation. *Id.*

Per DCSO Policy #1-3.400, inmates can be placed in a RHU after either a disciplinary hearing or after administrative consideration. *Id.*, ¶ 6. A hearing is required prior to placement under Disciplinary Status unless the inmate waives his or her right to a hearing. *Id.* Placement under Administrative Status does not require a hearing. *Id.* Also per DCSO Policy #1-3.400, when an inmate is placed under Administrative Status, a multidisciplinary Restrictive Housing Review Board ("Review Board") assesses the need for the inmate to continue in the status every seven days for the first 60 days, and once every 30 days thereafter. *Id.*, ¶ 7. At all times relevant to Plaintiff's Complaint, the Review Board convened every Tuesday. *Id.*

Inmates on administrative segregation are permitted to attend each Review Board meeting, and the inmate is afforded an opportunity to ask questions and plead his or her case regarding the placement. *Id.*, ¶ 8. On December 23, 2018, an inmate housed in the same pod as Plaintiff reported to a DCSO officer that Plaintiff had asked the inmate to murder several individuals, including Plaintiff's wife, upon the inmate's release from DCSO custody. *Id.*, ¶ 9. The officer memorialized the inmate's statement in a Sensitive Access Incident Report. *Id.*; Ex. B.

On January 8, 2019, an investigator with the Tennessee Bureau of Investigation ("TBI") notified Defendant Gentry via email of Plaintiff's solicitation to commit murder and requested that

Plaintiff be placed in the RHU to limit his ability to solicit other inmates to commit crimes. *Id.*, ¶ 10; Ex. C.

After consideration of Plaintiff's solicitation to commit murder while in DCSO custody and his multiple prior attempts to do the same, on January 24, 2019, Defendant Gentry placed Plaintiff in a RHU under Administrative Status in an effort to limit his ability to solicit other inmates to commit crimes. *Id.*, ¶ 11. Because Plaintiff was already in a RHU under Disciplinary Status for an unrelated incident, his Administrative Status term did not take effect until his Disciplinary Status term expired, which was on February 7, 2019. *Id.*; Exs. D, E.

On February 12, 2019, the Review Board explained to Plaintiff the purpose of his placement in administrative segregation. *Id.,* ¶ 12. Plaintiff was afforded an opportunity to ask questions and plead his case at this meeting. *Id.*

The Review Board reviewed Plaintiff's placement every week thereafter through April 9, 2019, and then thereafter monthly until Plaintiff's placement back in general housing on September 4, 2019. *Id.*, ¶ 13; Ex. F.

Plaintiff refused to see the Review Board on March 19, March 26, May 7, and July 2, 2019. *Id.*, ¶ 14.

Plaintiff's placement on Administrative Status ended on September 4, 2019, and he was placed back in general housing. *Id.*, ¶ 15. To continue to limit his interactions with other inmates, Plaintiff was placed in "two-man" general housing, where only two inmates are housed in the same cell, instead of the "open bay" housing, where potentially dozens of inmates could be housed in the same room. *Id.*

**B.    Declaration of Brian Eichstaedt**

Defendant Brian Eichstaedt is currently employed as a Warrant Officer with the DCSO,

but who, at all times relevant to Plaintiff's Complaint, was employed as a Corporal with the DCSO, and has been employed by DCSO for approximately six years. Docket No. 28-8, Declaration of Brian Eichstaedt ("Eichstaedt Dec."), ¶ 2.

Per DCSO Standard Operating Procedure ("SOP") #16-2.132R, Unit Rules for Administrative Segregation Inmates, detainees placed on Administrative Segregation status are permitted to keep in their cells two paperback books, two magazines, and one item of religious reading material. *Id.*, ¶ 3; Ex. A. Additional reading materials may be accessed through an inmate's case manager. *Id.*

Inmates are responsible for keeping their cells clean and orderly. *Id.*, ¶ 4. Per SOP #16-2.132R, inmates are not permitted to utilize unoccupied bunks in their cell as extra storage space. *Id.* All property permitted in an inmate's cell must fit and be maintained in two DCSO-issued laundry bags. *Id.* Any opened and unconsumed food is considered contraband and is disposed of for sanitary and pest control purposes. *Id.* Violations of these rules are grounds for corrective action. *Id.*

The housing rules are enforced for sanitary and pest control purposes in an effort to maintain safety and security for all inmates and DCSO personnel. *Id.*, ¶ 5.

Administrative segregation inmates are housed in a RHU. *Id.,* ¶ 6. Depending on their behavior, RHU inmates can participate each day in one hour of indoor out-of-cell time ("OCT") and one hour of outdoor recreation. *Id.* Outdoor recreation may be cancelled due to inclement weather or other security or safety concerns. *Id.* DCSO SOP #16-2.134, Out of Cell time – RHU, governs an RHU inmate's time out of his or her cell. *Id.*; Ex. B.

On April 19, 2019, Defendant Eichstaedt conducted a routine search of Plaintiff's cell. *Id.*, ¶ 7. During the search, Defendant Eichstaedt found an excessive amount of trash, which was

disposed of. *Id.* Excessive items such as batteries, books, and magazines were inventoried and sent to the Property Department to be stored with Plaintiff's other property. *Id.* Defendant Eichstaedt left in Plaintiff's cell two educational books, two religious books, and a novel series. *Id.* All other DCSO-issued books were returned to the case manager's office and were available to Plaintiff upon request with his case manager. *Id.* Several other items, including hygiene packs and legal paperwork were left in the cell, and Plaintiff was instructed to consolidate his belongings to fit into the two DCSO-issued laundry bags, per the housing rules. *Id.* Defendant Eichstaedt documented the results of his search in a Jail Incident Report. *Id.*; Ex. C.

On April 21, 2019, Defendant Eichstaedt and another correctional officer prepared inmates for indoor OCT. *Id.*, ¶ 8. They instructed each inmate, including Plaintiff, that before they would be permitted to participate in OCT, their cells must be clean and orderly, per the housing rules. *Id.* Plaintiff responded that he was "not going to remove anything from [the top] bunk." *Id.* After several hours, Plaintiff still had not cleared the unoccupied bunk in his cell, in violation of the housing rules. *Id.* Accordingly, Plaintiff, along with another inmate who similarly refused the officers' direct orders, were not permitted to participate in OCT that day. *Id.* Defendant Eichstaedt documented this incident in a Jail Incident Report. *Id.*; Ex. D.

On August 23, 2019, Defendant Eichstaedt conducted a routine search of the cells in Plaintiff's pod. *Id.*, ¶ 9. During the search of Plaintiff's cell, Defendant Eichstaedt found an excessive amount of food, DCSO-issued hygiene products, and dozens of bars of soap. *Id.* Defendant Eichstaedt discarded all opened and unfinished food. *Id.* Due to the excessive amount of property in Plaintiff's cell, he was instructed to consolidate his property so that it may be properly stored. *Id.* Defendant Eichstaedt documented the results of his search in a Jail Incident Report. *Id.*; Ex. E.

At no time did Defendant Eichstaedt deny or in any way impede Plaintiff's right to access religious services, Kosher meal service, or a Rabbi. *Id.*, ¶ 10.

At no time did Defendant Eichstaedt arbitrarily cancel Plaintiff's indoor OCT or outdoor recreation time. *Id.*, ¶ 11. Each time Defendant Eichstaedt did not permit Plaintiff to participate in indoor OCT or outdoor recreation was due to either his behavior, inclement weather, staffing issues, or other circumstances beyond his control. *Id.*

C.     **Declaration of Keli Oliver**

Keli Oliver is currently employed as Lead Administrative Counsel for the DCSO. Docket No. 28-14, Declaration of Keli Oliver ("Oliver Dec."), ¶ 2. As part of her job, Ms. Oliver has access to a variety of information including DCSO's policies, SOPs, and inmate files. *Id.*

The daily scheduled activities of an inmate housed in the RHU are recorded on Segregation Confinement and Activity Reports ("SCAR cards"). *Id.*, ¶ 3; Ex. A. A new SCAR card is completed for each month that an inmate is housed in the RHU. *Id.,* ¶ 4. The front page of an inmate's SCAR card includes information such as the inmate's name, offender number, and reason for placement in the RHU. *Id.* The back page includes slots for correctional officers to record an inmate's daily scheduled activities, including telephone use and participation in indoor OCT and outdoor recreation. *Id.* When an inmate uses the telephone on any particular day, it is recorded with a "Y" in the appropriate slot. *Id.* When an inmate refuses to participate in either indoor OCT or outdoor recreation, it is recorded with an "R" in the appropriate slot. *Id.* When an inmate participates in either indoor OCT or outdoor recreation, it is recorded with the time of the inmate's participation. *Id.*

Plaintiff's daily scheduled activities during his placement in the RHU under Disciplinary Status (January 24, 2019 – February 7, 2019) and under Administrative Status (February 7, 2019

– September 4, 2019) were recorded on SCAR cards. *Id.*, ¶ 5; Ex. B.

Ms. Oliver has reviewed Plaintiff's SCAR cards corresponding to his placement on Administrative Status. *Id.*, ¶ 6. Between February 7, 2019 and September 4, 2019, Plaintiff used the telephone 37 times, averaging ~5.7 days between each use. *Id.* Plaintiff refused to participate in indoor OCT 64 times, averaging 3.3 days between each refusal. *Id.* Plaintiff refused to participate in outdoor recreation 33 times, averaging ~6.4 days between each refusal. *Id.*

During August 2019 through September 4, 2019, Plaintiff participated in outdoor recreation 7 times and refused to participate in outdoor recreation 6 times. *Id.*, ¶ 7.

Ms. Oliver has also reviewed portions of Plaintiff's DCSO inmate file. *Id.*, ¶ 8. According to the case notes spanning February 2019 to September 2019, Plaintiff received law library services or was provided access to his excess legal documents on February 13, February 20, March 8, March 14, March 15, March 19, April 19, April 22, May 22, June 18, June 20, July 26, August 9, and August 22. *Id.*; Ex. C.

## III. LAW AND ANALYSIS

### A. Local Rule 56.01(c)

Regarding responses to the requisite Statement of Undisputed Facts filed contemporaneously in support of a Motion for Summary Judgment, Local Rule 56.01(c) states:

> **(c)** **Response to Statement of Facts**. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> > (1) Agreeing that the fact is undisputed;
> >
> > (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
> >
> > (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record.
>
> The response must be made on the document provided by the movant or on another

11

document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. Such response must be filed with the papers in opposition to the motion for summary judgment. In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact must be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute. A copy of the statement of additional disputed facts must also be provided to opposing counsel in an editable electronic format. Pro se parties are excused only from providing a copy of the statement of additional disputed material facts to opposing counsel in an editable electronic format, and such pro se parties must otherwise comply with the requirements of this section.

Local Rule 56.01(c).

As discussed above, while Plaintiff has filed his "Objection to Defendants' Statement of Undisputed Material Facts" (Docket No. 37), despite this court's warning that Plaintiff's response "must show there is a material dispute of fact with citation to the record, affidavits or other matter of evidence" and that failure to respond to a statement of facts in the manner outlined by the court "may result in the court taking the facts alleged in the matter as true and granting the relief requested," Plaintiff's "responses" do not contain the required citations to the record, nor do they show either that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. *See* Local Rule 56.01(c). *See also*, Fed. R. Civ. P. 56(c)(1), *infra*. Plaintiff has therefore failed to properly respond to Defendants' Statement of Undisputed Material Facts, and, pursuant to Local Rule 56.01(g), Plaintiff's failure to properly respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

### B.    Motion for Summary Judgment

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to properly respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

**(c)    Procedures.**

**(1)    *Supporting Factual Positions*.**  A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> **(A)**    citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> **(B)**    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**C.    42 U.S.C. § 1983**

Plaintiff filed this action pursuant to 42 U.S.C. §1983. Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

### D. Qualified Immunity

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1983). The right at issue "must have been articulated with a significant degree of particularity," so that it is sufficiently clear to a reasonable official that his or her conduct would violate the right at issue. *Eugene D. v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989). Qualified immunity is available as long as the official's actions "could reasonably have been thought consistent with the rights [he or she] alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038 (1987).

The initial inquiry and threshold question, according to the Supreme Court, is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S. Ct. 1789, 1973 (1991). If no constitutional right was violated, there is no necessity for further inquiry. *Id.*

A critical question is whether "any official in the defendants' position would understand that what he did violated those rights." *O'Brien v. City of Grand Rapids*, 23 F. 3d 990, 999 (6th Cir. 1994). Qualified immunity, therefore, "does not turn on the subjective good faith of the official; rather, it turns on the 'objective legal reasonableness' of his actions, assessed in light of the legal rules that were 'clearly established' at the time the actions were taken." *Id., quoting Harlow*, 457 U.S. at 818-19. "If officers of reasonable competence could disagree on whether the conduct violated the plaintiff's rights," qualified immunity will apply. *Id.*, *quoting Grossman v.*

*Allen*, 950 F. 2d 338, 341 (6th Cir. 1991)(citations omitted).

Additionally, in cases involving multiple defendants sued in their individual capacities, the liability of each defendant must be assessed individually based on his or her own action. *Dorsey v. Barber*, 517 F.3d 389, 399, n. 4 (6th Cir. 2008), *citing Ghandi v. Police Dep't of the City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984).[3]

**E.      The Case at Bar**

Plaintiff in the instant action brings substantive and procedural due process claims, as well as First Amendment free exercise and retaliation claims. Docket No. 1.

Addressing first Plaintiff's substantive due process claim, Defendants argue that this claim is time-barred because claims brought under §1983 in Tennessee are subject to a one-year statute of limitations and Plaintiff filed the challenge to his placement in administrative segregation more than one year after Defendant Gentry assigned him to administrative segregation. Docket No. 29, *citing Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); Tenn. Code Ann. § 28-3-104(a)(3).

Plaintiff's claim is that the decision to place him in administrative segregation was to punish him for complaints about case managers which violated his rights to due process. Docket No. 1 at 16. On initial review the court found that the Plaintiff stated a "colorable claim that his classification by Defendant Gentry violated his substantive due process rights." Docket No. 5, p. 7. The undisputed facts demonstrate that: (1) Plaintiff signed his Complaint on April 15, 2020; (2) Defendant Gentry's decision to place Plaintiff in administrative segregation occurred on January 24, 2019; and (3) Plaintiff began his term in administrative segregation on February 7, 2019.

---

[3] "Persons sued in their individual capacities under §1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cty. Of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

16

*Compare* Docket No. 1 *with* Gentry Dec., ¶ 11; Ex. E. Because Plaintiff filed this action outside the one-year statute of limitations, this claim is time-barred, and Defendant Gentry is entitled to a judgment as a matter of law on this claim.

Even if Plaintiff's substantive due process claim was not time-barred, however, Defendant Gentry is nevertheless entitled to judgment as a matter of law on this claim because the undisputed facts establish that: (1) on December 23, 2018, an inmate housed in the same pod as Plaintiff reported to a DCSO officer that Plaintiff had asked the inmate to murder several individuals, including Plaintiff's wife, upon the inmate's release from DCSO custody; (2) that information was provided to the Tennessee Bureau of Investigation ("TBI"); (3) on January 8, 2019, a TBI investigator requested that Defendant Gentry move Plaintiff to a RHU to limit his ability to solicit other inmates to commit crimes; and (4) after consideration of Plaintiff's solicitation to commit murder while in DCSO custody and his multiple prior attempts to do the same, on January 24, 2019, Defendant Gentry placed Plaintiff into a RHU under Administrative Status in an effort to prevent him from committing criminal offenses while in DCSO custody. Gentry Dec., ¶¶ 9-11; Exs. B-E. Because Defendant Gentry's decision to house Plaintiff in Administrative Segregation was reasonably related to a legitimate governmental objective; namely, to limit Plaintiff's ability to solicit other inmates to commit crimes, Defendant Gentry did not violate Plaintiff's substantive due process rights and she is entitled to a judgment as a matter of law on this claim. *See Martucci v. Johnson*, 944 F.2d 291, 294 (6th Cir. 1991).

Turning next to Plaintiff's procedural due process claim, Plaintiff argues that placing him in Administrative Segregation in a RHU without a hearing violated his rights. Docket No. 1. The undisputed facts establish that per DCSO Policy #1-3.400, an inmate can be placed under Administrative Status after administrative consideration and without a hearing. Gentry Dec., ¶ 6;

Ex. A. The undisputed facts further establish that when an inmate is placed under Administrative Status, a multidisciplinary Restrictive Housing Review Board assesses the need for the inmate to continue the status every seven days for the first 60 days and every 30 days thereafter. *Id.*, ¶ 7; Ex. A. It is additionally undisputed that Administrative Status inmates are permitted to attend each Review Board meeting, and the inmate is afforded an opportunity to ask questions and plead his case regarding the placement. Gentry Dec., ¶ 8.

With regard to Plaintiff's confinement specifically, it is undisputed that: (1) on February 7, 2019, Plaintiff began serving his term in administrative segregation that forms the basis of his claim; (2) at the Review Board's February 12, 2019 meeting, the purpose of Plaintiff's placement in administrative segregation was explained to him and he was provided an opportunity to ask questions and plead his case; and (3) the Review Board reviewed Plaintiff's placement every week thereafter through April 9, 2019, and then monthly until Plaintiff's placement back in general housing on September 4, 2019. Gentry Dec., ¶¶ 11-13; Ex. F. Because Plaintiff's placement into administrative segregation complied with DCSO Policy #1-3.400, Plaintiff was afforded an opportunity to ask questions and plead his case to the Review Board, and Plaintiff's placement was reviewed on a regular basis throughout the duration of his segregation term, Defendants did not violate Plaintiff's procedural due process rights and they are entitled to a judgment as a matter of law on this claim.

As to whether Plaintiff's administrative segregation imposed an "atypical and significant" hardship on him "in relation to the ordinary incidents of prison life," Plaintiff argues that the limitations on phone access, visitation, religious activities, law library access, time out of his cell, and requirement that he be restrained when outside of his cell, do constitute an "atypical and significant" hardship on him so as to implicate a deprivation of a liberty interest protected by the

due process clause. *See* Docket No. 1. The undisputed facts, however, demonstrate that Administrative Status inmates: (1) are provided access to recreational reading materials, legal research materials, the law library, social services, case management services, religious guidance, recreational programs, educational programs, and visitation; (2) can participate daily in one hour of indoor OCT and one hour of outdoor recreation, depending on their behavior; and (3) are permitted 15 minutes of telephone use every day during their OCT. Gentry Dec., ¶ 5; Ex. A; Eichstaedt Dec., ¶ 6; Ex. B.

With respect to Plaintiff specifically, the undisputed facts establish that, per DCSO's records, during his term of administrative segregation, Plaintiff used the telephone 37 times, received law library services or was provided access to his excess legal documents 14 times, refused to participate in OCT 64 times, and refused to participate in outdoor recreation 33 times. Oliver Dec., ¶¶ 3-6, 8; Ex. C. DCSO records further demonstrate that, only 32 times during Plaintiff's 210-day term in administrative segregation, were neither indoor OCT nor outdoor recreation offered to Plaintiff on the same day. Oliver Dec., Ex. B. Accordingly, Plaintiff cannot establish that being in administrative segregation imposed an "atypical and significant" hardship on him "in relation to the ordinary incidents of prison life," and Defendants are entitled to a judgment as a matter of law on this claim.

With regard to Plaintiff's First Amendment claims, Plaintiff argues that his free exercise rights have been violated and that Defendant Eichstaedt retaliated against him. Docket No. 1. The undersigned will address each in turn. In order to establish a violation of First Amendment free exercise rights, a plaintiff must demonstrate that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things"; (2) his belief is sincerely held; and (3) defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir.

1987). A defendant-jailer's behavior does not infringe on an inmate's free exercise rights unless it "place[s] a substantial burden on the observation of a central religious belief or practice." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). The burden "must place more than an inconvenience on religious exercise." *Living Water Church of God v. Charter Twp. Or Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007). In the instant action, the undisputed facts establish that Defendant Eichstaedt did not impede Plaintiff's right to access religious services, Kosher meal service, or a Rabbi. Eichstaedt Dec., ¶ 10. The undisputed facts further establish (and Plaintiff so concedes) that, following a routine search of Plaintiff's cell on April 19, 2019, during which he confiscated contraband, Defendant Eichstaedt left two items of religious reading materials in Plaintiff's cell. *Id.*, ¶ 7. It is also undisputed that any other DCSO-issued books that Defendant Eichstaedt confiscated and returned to the case manager's office after the search were still available to Plaintiff upon request with his case manager. *Id.* In light of the foregoing, Plaintiff cannot establish that Defendant Eichstaedt placed a "substantial burden" on Plaintiff's free exercise of religion, and Defendant Eichstaedt is entitled to a judgment as a matter of law on this claim.

Addressing next Plaintiff's First Amendment retaliation claim, in order to prevail on this claim Plaintiff must demonstrate that: (1) he engaged in protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between the protected speech or conduct and the adverse action (i.e., the adverse action was motivated, at least in part, by the plaintiff's protected speech or conduct). *Dye v. Office of the Racing Comm'n,* 702 F.3d 286, 294 (6th Cir. 2012). Plaintiff must demonstrate "more than his personal belief that he is the victim of retaliation." *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). Plaintiff simply cannot do so.

While Plaintiff argues that Defendant Eichstaedt retaliated against him by confiscating non-contraband items from his cell after he filed grievances against him, the undisputed facts demonstrate that, on April 19, 2019 and August 23, 2019, Defendant Eichstaedt participated in routine cell searches that included Plaintiff's cell. Eichstaedt Dec., ¶¶ 7, 9. The undisputed facts further establish that, in both instances, Defendant Eichstaedt discarded excessive amounts of trash found in Plaintiff's cell, including opened and unconsumed food, which is considered contraband due to the sanitation and pest control problems it causes in the jail, and the remainder of Plaintiff's confiscated items were inventoried and sent to the Property Department to be stored with Plaintiff's other personal property. *Id.*; *Id.,* ¶4. It is additionally undisputed that, although having excess property in his cell was grounds for corrective action, Defendant Eichstaedt instead directed Plaintiff to consolidate his property so that it could be properly stored. *Id.* Plaintiff simply cannot establish a causal connection between Plaintiff's protected speech and Defendant Eichstaedt's conduct as required to support a First Amendment claim and Defendant is entitled to a judgment as a matter of law on this claim.

With regard to Plaintiff's allegation that Defendant Eichstaedt arbitrarily restricted his out of cell and recreation time, it is undisputed that: (1) an inmate's time out of his cell is often dictated by inclement weather or other security or safety concerns; (2) an inmate's time out of his cell is predicated on the inmate's good behavior; and (3) each time Defendant Eichstaedt did not permit Plaintiff to participate in indoor OCT or outdoor recreation, it was due to either Plaintiff's behavior, inclement weather, staffing issues, or other circumstances beyond his control. Eichstaedt Dec., ¶¶ 6, 11; Ex. B. Accordingly, Plaintiff cannot establish that Defendant Eichstaedt retaliated against him, and Defendant Eichstaedt is entitled to a judgment as a matter of law on this claim.[4]

---

[4] While Defendants Gentry and Eichstaedt have raised the defense of qualified immunity, because

# IV. CONCLUSION

In light of the foregoing and for the reasons discussed above, the undersigned finds that there are no genuine issues of material fact, and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 28) be **GRANTED**, and that this action be **DISMISSED WITH PREJUDICE.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

---

the undisputed facts establish that Defendants did not violate Plaintiff's constitutional rights, it is unnecessary for the undersigned to further discuss qualified immunity.